UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITIZENS BANK, N.A.,

Plaintiff,                                    Case No. 20-cv-12393

v.                                            U.S. DISTRICT COURT JUDGE
                                              GERSHWIN A. DRAIN

HOWARD L. MARGOLIS, ET AL.,

Defendants.
_____/

**OPINION AND ORDER DENYING DEFENDANTS' MOTION TO COMPEL OR IN THE ALTERNATIVE DISMISS PORTIONS OF THE COMPLAINT [#28]**

**I. INTRODUCTION**

On September 2, 2020, Plaintiff Citizens Bank, N.A. ("Citizens Bank") filed the instant action against Defendants Howard Margolis ("Margolis"), RBC Capital Markets, LLC, and RBC Wealth Management, a division of RBC Capital Markets, LLC (collectively referred to as "RBC"). *See* ECF No. 1. In its Complaint, Plaintiff alleges that Margolis intentionally solicited Citizens Bank clients to transfer their business to RBC in violation of his prior employment agreements with Plaintiff. *Id.* Plaintiff brings nine federal and state claims against Defendants, including breach of contract and conversion as well as violations of the Defend Trade Secrets Act and the Michigan Uniform Trade Secrets Act. *See id.* at PageID.21-32. On September 3, 2020, this Court granted Plaintiff's Ex Parte Temporary Restraining Order and

1

enjoined Defendants from soliciting or otherwise enticing Citizens Bank clients to terminate their existing relationships with Citizens Bank, among other directives. ECF No. 10, PageID.234.   The parties subsequently entered into a stipulated preliminary injunction on September 24, 2020.  ECF No. 27.

Presently before the Court is Defendants' Motion to Compel or in the Alternative Dismiss Portions of the Complaint [#28].  The matter is fully briefed.  A hearing was held on December 16, 2020.  For the reasons herein, the Court will **DENY** Defendants' Motion to Compel or in the Alternative Dismiss Portions of the Complaint [#28].

## II. FACTUAL BACKGROUND

In March 2015, Defendant Howard Margolis began his employment with Plaintiff Citizens Bank as a Senior Vice President.  ECF No. 28-2, PageID.621. Defendant served as a financial advisor for upwards of twenty clients, including friends and family members, while at Citizens Bank.  *Id.*; ECF No. 1, PageID.2.  As a condition of his employment, Margolis was exposed to confidential Citizens Bank information such as "private bank and institutional clients of Citizens Bank and its affiliates, along with a host of key prospects . . . strategic targets, fees and pricing . . . and both client and employee relationships" in his targeted region.  ECF No. 1, PageID.10.

Margolis executed two employment agreements with Citizens Bank—one in 2015 ("2015 Agreement"), and the next in 2018 ("2018 Agreement").  ECF No. 28, PageID.599; ECF No. 31, PageID.683. Pursuant to the 2015 Agreement, Defendant was duly employed with Citizens Bank and its nonparty affiliate, CCO Investment Services Corporation, now known as Citizens Securities, Inc. ("Citizens Securities").  ECF No. 1, PageID.9-10.  As a condition of his employment, Margolis was required to adhere to various industry rules and regulations, including those of the Financial Industry Regulatory Authority ("FINRA").  ECF No. 28-4, PageID.630-631.  Margolis also agreed to remain licensed as a FINRA-registered financial advisor.  *Id.*  Margolis was accordingly registered under FINA throughout the entirety of his employment at Citizens Bank.  ECF No. 28-2, PageID.621.  While Citizens Securities is a FINRA-member firm, Citizens Bank is not.  ECF No. 28, PageID.598.

On April 30, 2018, Margolis was offered a new position at Citizens Bank. ECF No. 28-5, PageID.637.  The 2018 Agreement superseded the 2015 Agreement and designated his promotion to the position of Senior Vice President, PWM Advisor Group Market Lead.  *Id.*  ("This offer letter . . . comprise[s] the entire understanding between you and Citizens regarding the terms and conditions of your employment with Citizens, and fully supersede[s] any and all prior verbal or written communications regarding those terms and conditions . . . .").  Importantly, the 2018

Agreement is only between Margolis and Citizens Bank; there is no mention of Citizens Securities or dual employment as in the 2015 Agreement. *See id.* Plaintiff states that "beginning in 2018, Margolis was not working for [Citizens Securities], but rather could refer clients to individuals at [Citizens Securities] if clients were appropriate for that market segment." ECF No. 31, PageID.683 (internal parentheticals omitted). Defendants maintain, however, that Margolis continued as a dual employee of Citizens Securities after the execution of the 2018 Agreement. ECF No. 28, PageID.599.

Both the 2015 and 2018 Agreements included non-solicitation language that bound Margolis for one year after his employment was terminated. *See* ECF No. 28-4, PageID.633; ECF No. 28-5, PageID.638. The 2018 Agreement contained the following non-solicitation language:

> You also agree that during your employment . . . and for a period of 365 days following the termination of employment for any reason, you will not directly or indirectly (through any corporation, partnership or other business entity of any kind) solicit, assist in soliciting for business or entice away or in any manner attempt to persuade any client or customer or prospective client or customer to discontinue or diminish his, her or its relationship or prospective relationship with Citizens or its affiliates, or otherwise provide business to any person, corporation, partnership or other business entity of any kind other than Citizens or its affiliates.

ECF No. 28-5, PageID.638.

Defendant Margolis was terminated from his position at Citizens Bank on July 15, 2020. ECF No. 1, PageID.16. About a month later, Margolis joined Defendants

RBC and began his employment on August 20, 2020. *Id.* at PageID.272. RBC, unlike Citizens Bank, is a FINRA-member firm. ECF No. 28, PageID.599.

Citizens Bank commenced this action alleging that immediately upon joining RBC, Margolis began contacting and soliciting Citizens Bank's clients in violation of his non-solicitation agreements. *See* ECF No. 15, PageID.441. Plaintiff supports its claim by providing documentation of Margolis' social media posts and emails that purportedly demonstrate attempts at solicitation. *See* ECF No. 1, PageID.89, 95. Citizens Bank also contends that Margolis is utilizing "his insider and specific knowledge of client information in an attempt to solicit clients away from Citizens Bank" and to Defendants RBC. ECF No. 1, PageID.21.

## IV. DISCUSSION

Defendants move the Court to find that this dispute is subject to FINRA arbitration and should be dismissed for lack of subject matter jurisdiction. If this Court does not compel arbitration, Defendants alternatively request dismissal of three claims alleged in Plaintiff's Complaint. The Court will address each argument in turn.

### A. Arbitration is Not Appropriate When Plaintiff Citizens Bank is Not Bound by FINRA Arbitration

#### 1. Standard of Review

When a party seek to dismiss an action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), a district court is "bound to consider the 12(b)(1) motion first,

since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).

Courts within this Circuit have applied a Rule 12(b)(1) analysis to motions to compel arbitration and dismiss the underlying complaint. *See Others Powers Distrib. Co., Inc. v. Grenzebach Corp.*, No. 16-12740, 2016 WL 6611032, at n.1 (E.D. Mich. Nov. 9, 2016) (citing to additional cases in the Eastern District of Michigan and Southern District of Ohio holding the same). Thus, a district court must first determine whether it lacks subject matter jurisdiction to hear a plaintiff's claims because they must submit to arbitration instead. *See Multiband Corp. v. Block*, No. 11-15006, 2012 WL 1843261, at *5 (E.D. Mich. May 21, 2012). In doing so, a court may "rely on affidavits or any other evidence properly before it and has wide latitude to collect evidence to determine the issue of subject matter jurisdiction." *Id.*

It is incumbent on a district court to determine as a threshold matter whether an agreement creates a duty for the parties to arbitrate a particular grievance or claim. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649, (1986); *see also Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 625, (1985) ("[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute."). This inquiry

requires a court to evaluate, first, whether a valid agreement to arbitrate exists between the parties and, second, whether the specific dispute at issue falls within the substantive scope of that agreement. *Watson Wyatt & Co. v. SBC Holdings, Inc.*, 513 F.3d 646, 649 (6th Cir. 2008).

Generally, "doubts regarding arbitrability must be resolved in favor of arbitration . . . because there is a strong presumption in favor of arbitration" under the Federal Arbitration Act. *Glazer v. Lehman Bros.*, 394 F.3d 444, 450 (6th Cir. 2005) (additional citations omitted). The United States Supreme Court has cautioned, however, that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960). Federal courts have often denied motions to compel FINRA arbitrations rather than require a party to submit to an arbitration to which that party did not agree. *CIG Asset Mgmt. v. Bircoll*, No. 13-CV-13213, 2013 WL 4084763, at *2 (E.D. Mich. Aug. 13, 2013) (Drain, J.) (citing numerous cases standing for the same proposition).

### 2. Analysis

Defendants argue that Plaintiff must submit to FINRA arbitration because (1) the 2018 Agreement between Margolis and Citizens Bank incorporated numerous references to FINRA regulations, including a Form U-4, that bind Plaintiff to arbitration; (2) Citizens Bank was a third-party beneficiary under an estoppel theory;

and (3) Citizens Bank operates Citizens Securities as its alter ego such that arbitration is the proper forum for this dispute.  ECF No. 28, PageID.595-596.  Plaintiff responds to Defendants' assertions by maintaining that, because Citizens Bank is not a FINRA-member firm and did not incorporate contract arbitration clauses in either of its employment agreements, it is improper to require Citizens Bank to arbitrate this matter.  ECF No. 31, PageID.684-685.

Upon review of the parties' arguments, the Court agrees with Plaintiff and is particularly persuaded by the Eighth Circuit's opinion in *Bank of America, N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d 906 (8th Cir. 2010).  In *Bank of America*, the Eighth Circuit found that the plaintiff bank did not agree to FINRA arbitration because it was not a FINRA member and did not incorporate FINRA arbitration language in its contracts with the defendant financial advisors.  *Id.* at 912.  Notably, the court specified that an executed FINRA Form U-4 was not sufficient to compel arbitration when the plaintiff bank was not a FINRA member.  *Id.*

The Eighth Circuit's analysis is instructive and presents facts nearly identical to the present matter.  Here, Defendants are asserting that Citizens Bank must submit to FINRA arbitration because it is either a third-party beneficiary of the 2015 Agreement, or that it incorporated FINRA language in its 2018 Agreement such that it must be bound to FINRA arbitration.  But neither employment agreement identified Citizens Bank as a third-party beneficiary or included express arbitration

language. Further, it appears that any benefit Plaintiff received from Margolis'
FINRA membership was incidental; as Plaintiff explains, "[b]y continuing to
maintain his registration with FINRA, Margolis would potentially receive a benefit,
in the form of a portion of commissions or fees, for any clients who consummated
sales/investments via other individuals at [Citizens Securities], but this in and of
itself did not make him employed" with Citizens Securities, nor does it make
Citizens Bank a third-party beneficiary. ECF No. 31, PageID.684.

A case in the Northern District of New York confronted similar issues and
also found that the defendants failed to demonstrate how the plaintiff financial
services company received a benefit flowing directly from the Form U-4 and its
arbitration clause. *Ayco Co., L.P. v. Frisch*, No. 1:11-CV-580 LEK/DRH, 2012 WL
42134, at *10 (N.D.N.Y. Jan. 9, 2012) ("[Plaintiff] may have benefitted from
Defendants' obtaining securities licenses as a result of signing the agreement with
[its affiliate], inasmuch as Defendants' ability to sell securities became an additional
service that they could offer to their clients . . . [t]his alone, however, does not suffice
to show a benefit flowing directly from the Form U–4 Agreement itself."). As in
*Ayco*, Margolis and RBC have not demonstrated how Citizens Bank derived a
benefit from the Form U-4 and specifically its arbitration clause. *Id.* Without
establishing this critical element, Defendants' argument that Citizens Bank should

be bound by FINRA arbitration as either a third-party beneficiary or via incorporation falls flat.

Defendants attempt to make the distinction that *Ayco*, *Bank of America*, and other cases are not persuasive in this matter because "[i]n those cases, the non-FINRA member firm did not incorporate the Form U-4 by reference in the employment agreement, which Citizens Bank did here."  ECF No. 35, PageID.898.  Defendants are correct that the 2018 Agreement states that all documents referenced and attached to the Agreement, including the Form U-4, "comprise the entire understanding between" Margolis and Citizens Bank.  ECF No. 28-5, PageID.640.  However, the arbitration provision in the Form U-4 specifies that Margolis agreed to arbitrate any disputes with his "firm," which is defined not as Citizens Bank, but as Citizens Securities—the FINRA-member firm to which Margolis could refer clients.  Further, as in *Bank of America*, "[t]here is no evidence that [F]orm U–4, the FINRA membership agreement, in any way referenced [plaintiff] as a third party beneficiary or that it contained any language benefitting a third party in [plaintiff]'s position."  *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d at 913.  Thus, it follows that this Court should not compel Citizens Bank to submit to FINRA arbitration it never agreed to be bound by.

Additionally, Defendants contend that because Citizens Bank "*require*[*d*] that Mr. Margolis be FINRA licensed, *require*[*d*] him to comply with FINRA rules, and

incorporate[*d*] the Form U-4 as a condition of employment," Plaintiff should be subject to FINRA arbitration. ECF No. 35, PageID.897 (emphasis in original). Defendants attempt to distinguish *Bank of America* and *Ayco* by arguing that neither case required FINRA licensing as a condition of employment, as in the present matter. But both cases, and particularly *Ayco*, suggest that this is not a critical distinction that mandates FINRA arbitration. To the contrary, the *Ayco* court found that FINRA arbitration was not warranted even when the plaintiff ordered the defendant financial advisors to register with FINRA. *See Ayco Co., L.P. v. Frisch*, No. 1:11-CV-580 LEK/DRH, 2012 WL 42134, at *3 ("As account managers, Defendants applied to become registered FINRA representatives in order to obtain securities licenses, which they claim—and Plaintiff does not appear to dispute—they were directed to do by [Plaintiff]."). Defendants' argument, therefore, does not persuade the Court that FINRA arbitration is appropriate here.

Finally, Defendants briefly put forth the argument that Citizens Bank, as a nonparty signatory to the Form U-4, should submit to FINRA arbitration under the theory of veil-piercing and alter ego, which is derived from both contract and agency principles. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 631 (2009); *see D & R Co., LLC v. BASF Corp.*, No. 09-CV-10641, 2010 WL 11545257, at *3 (E.D. Mich. Mar. 26, 2010) (Murphy, J.). They point to a provision in the 2018 Agreement

that indicates any amendments to the Form U-4 should be provided to Citizens Bank within thirty days.  ECF No. 28-5, PageID.640.

A corporate veil may be pierced only where an otherwise separate corporate existence has been used to 'subvert justice or cause a result that is contrary to some overriding public policy." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007) (additional citation and quotations omitted). "Michigan courts will not pierce the corporate veil unless (1) the corporate entity was a mere instrumentality of another entity or individual; (2) the corporate entity was used to commit a fraud or wrong; and (3) the [party] suffered an unjust loss." *Servo Kinetics, Inc. v. Tokyo Precision Instruments Co.*, 475 F.3d 783, 798 (6th Cir. 2007).

Defendants have not put forth evidence or relevant cases to support any one of these elements.  Citizens Bank's mandate to keep it apprised of any amendments to the Form U-4, without additional facts to support the contention that Citizens Securities is a mere instrumentality of Citizens Bank, does not support Defendants' alter ego claim.  Conversely, the present motions have repeatedly differentiated Plaintiff and Citizens Securities by noting their associations—or lack thereof—with FINRA, the separate financial services each provide to clients, and their prior significance to Margolis' position as a financial advisor.  *See* ECF No. 31, PageID.684.

Thus, upon review of the relevant facts, Defendants have failed to establish that its claims against Citizens Bank are subject to FINRA arbitration under the theories of incorporation, estoppel and third-party beneficiary status, or veil piercing. The evidence before this Court does not establish that Citizens Bank, which is not a FINRA member firm, consented to be bound by FINRA arbitration or sought the benefit of the Form U-4 in the context of the non-solicitation agreement dispute. *See CIG Asset Mgmt., Inc. v. Bircoll*, No. 13-CV-13213, 2014 WL 4059832, at *3 (holding that because the plaintiff did not consent to FINRA jurisdiction, the defendant could not pursue any claims related to the contested investments in FINRA arbitration). Put simply, Citizens Bank did not agree to arbitrate claims with Defendants "and cannot be compelled to do so." *Bank of Am., N.A. v. UMB Fin. Servs., Inc.*, 618 F.3d at 914. Accordingly, the Court will deny Defendants' request to compel arbitration.[1]

## B. Plaintiff Citizens Bank Has Pled Sufficient Facts at this Stage to Survive a Motion to Dismiss

### 1. Standard of Review

---

[1] In its Response, Plaintiff also argues that Defendants have waived their right to arbitrate this dispute since they have significantly participated in the litigation thus far, including a preliminary injunction proceeding and discovery. *See Johnson Assocs. Corp. v. HL Operating Corp.*, 680 F.3d 713, 717 (6th Cir. 2012). Because this Court has already denied Defendants' request to compel arbitration under the three theories it originally proposed in its Motion, the Court will decline to engage in the waiver analysis, as it does not impact the ultimate disposition of the matter.

Federal Rule of Civil Procedure 12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted.  *See* Fed. R. Civ. P. 12(b)(6).  To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint must comply with the pleading requirements of Federal Rule of Civil Procedure 8(a)(2).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Rule 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  To meet this standard, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678–80 (applying the plausibility standard articulated in *Twombly*).

When considering a Rule 12(b)(6) motion to dismiss, the Court must construe the complaint in a light most favorable to the plaintiff and accept all of its factual allegations as true.  *Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008).  While courts are required to accept the factual allegations in a complaint as true, *Twombly*, 550 U.S. at 556, the presumption of truth does not apply to a claimant's legal conclusions.  *See Iqbal*, 556 U.S. at 678.  Therefore, to survive a motion to dismiss, the plaintiff's pleading for relief must provide "more than labels and conclusions,

and a formulaic recitation of the elements of a cause of action will not do." *Ass'n of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotations omitted).

### 2. Analysis

Defendants seek in the alternative to dismiss three counts of Plaintiff's Complaint: (1) Count I, which alleges breach of the 2015 Agreement; (2) Count V, which alleges tortious interference of both the 2015 and 2018 Agreements;[2] and (3) Count VII alleging conversion. Defendants claims that dismissal is warranted because the 2018 Agreement superseded the 2015 Agreement, thus precluding Plaintiff from bringing any claims relating to it, and that Plaintiff's conversion claim cannot be maintained as pled. ECF No. 28, PageID.612. Plaintiff argues that Defendants' assertions are misplaced and premature, and that it has pled sufficient facts to withstand dismissal at this stage. ECF No. 31, PageID.701.

### a. Breach of Contract (Count I) and Tortious Interference with a Contractual Relationship (Count V)

Count I of Plaintiff's Complaint alleges that Margolis breached the confidentiality provisions of the 2015 Agreement by purportedly soliciting Citizens Bank clients to move their accounts to his new employer, Defendants RBC. ECF No. 1, PageID.22. Count V claims that RBC unjustifiably instigated these alleged

---

[2] Defendants seek to dismiss Count V only as it pertains to the 2015 Agreement. ECF No. 28, PageID.612.

breaches of Margolis' contract. *Id.* at PageID.28. Defendants argue that both counts should be dismissed because the 2015 Agreement is no longer enforceable, as the 2018 Agreement superseded Margolis' employment obligations. However, Plaintiff notes specific language from the 2015 Agreement that indicates portions of the contract survived termination: "The provisions of this Paragraph 10 shall survive the termination of this Agreement and of your employment hereunder, irrespective of the reasons therefor." ECF No. 28-4, PageID.633. Paragraph Ten of the 2015 Agreement pertains to various confidentiality and non-solicitation agreements made by Margolis upon signature of the document. *See id.* In contrast, Defendants point to language in the 2018 Agreement that states its terms fully supersede all prior verbal and written communications. ECF No. 28, PageID.612.

In order to state a claim for tortious interference with a contractual relationship, a plaintiff must allege the following elements: "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.*, 268 Mich. App. 83, 90, 706 N.W.2d 843, 849 (2005).

Neither Plaintiff nor Defendants cite to any case law to support their positions. Instead, they evidently disagree as to the application of the 2015 Agreement's Paragraph Ten provision and the significance of the 2018 Agreement's superseding language in the present dispute. Upon review of the contractual language, it is not

immediately evident that Paragraph Ten of the 2015 Agreement language does not still apply to Margolis in some capacity, whether it be via the confidentiality provisions, the non-solicitation agreement, or both.  Further, both RBC and Margolis allegedly sending out "a wealth management solicitation email to one or more Citizens Bank clients" suggests that RBC may have unjustifiably instigated a breach of Margolis' agreements with Citizens Bank.  ECF No. 1, PageID.20.  At this stage of the litigation, Plaintiff need only "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  It has done so here.  Accordingly, the Court declines to dismiss Plaintiff's Counts I and V.

### b. Conversion (Count VII)

Lastly, Defendants seek to dismiss Count VII of Plaintiff's Complaint, which alleges that Defendants wrongfully and willfully obtained Citizens Bank's confidential information.  ECF No. 1, PageID.30.  Defendants first argue that, as to Margolis individually, Plaintiff cannot maintain both its breach of contract claims and a conversion claim when the conversion claim is not based on a duty independent of the contract.  ECF No. 28, PageID.614.  Defendants cite to *Devon* in support of their argument.  *Devon Indus. Grp., LLC v. Demrex Indus. Servs., Inc.*, No. 11-10313, 2012 WL 4839013, at *5 (E.D. Mich. Oct. 11, 2012) (Cox, J.).  But as Plaintiff notes, *Devon* stands for a slightly different conclusion: a plaintiff may maintain a breach of contract and conversion claim if it seeks to plead conversion in

the alternative, such as when a contract is later deemed invalid.  *Id.*  Defendants fail to address Plaintiff's statement that it is pleading the conversion claim in the alternative.

Plaintiff is correct that pleading in the alternative is permitted by Federal Rule of Civil Procedure 8.  FED. R. CIV. P. 8(d)(2).  Rule 8 provides that a party:

> may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.

*Id.*  Citizens Bank specifies that this claim is pled in the alternative and, apart from the 2015 and 2018 Agreements, Plaintiff "relies on its Code of Conduct, its policies, its training," and other entities as additional means to preserve its right to its confidential information.  ECF No. 31, PageID.702.  Thus, even if both employment agreements were later found invalid, Citizens Bank could potentially maintain its conversion claim.  The Court will not dismiss Count VII on this ground.

Defendants also assert that this Court must dismiss Plaintiff's Count VII because it is preempted by the Michigan Uniform Trade Secret Act ("MUTSA"). ECF No. 28, PageID.615.  They argue that all of the confidential information allegedly converted by Defendants qualifies as a trade secret and, since "the conversion claim is based solely on the misappropriation of trade secrets," the claim is therefore preempted by MUTSA.  *Id.*  Plaintiff disagrees, pointing to language in

its Complaint that describes confidential information that falls outside the ambit of a trade secret but remains pertinent to this claim.

Both parties cite to *Konica* in support of its argument. *Konica Minolta Bus. Sols., U.S.A., Inc. v. Lowery Corp.*, No. 15-11254, 2016 WL 6828472, at \*4 (E.D. Mich. Nov. 18, 2016) (Roberts, J.). *Konica* emphasizes that "[t]he critical inquiry for courts in determining whether a claim is displaced by the MUTSA is whether the claim in question is based solely on the misappropriation of a trade secret." *Konica*, No. 15-11254, 2016 WL 6828472, at \*4 (citing *American Furukawa, Inc. v. Hossain*, 103 F. Supp. 3d 864, 884 (E.D. Mich. 2015)). If a claim "states any wrongful conduct independent of the misappropriation of trade secrets," it is not subject to MUTSA preemption. *Id.*

The Court is not persuaded by Defendants' argument that *all* of Plaintiff's confidential information allegedly converted by Defendants rises to the level of a trade secret. Plaintiff cites to language in its Complaint, which lists "key prospects, processes, manuals, compliance mandates, strategic targets, fees and pricing, service offerings, marketing strategies, strategic programs and both client and employee relationships" as potentially converted confidential information. ECF No. 1, PageID.10. Plaintiff does not claim, nor do Defendants credibly assert, that every separate element of Plaintiff's confidential data must also be characterized as a trade secret. Because preemption is based on the allegations in the Complaint, *Bliss*

*Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 947 (W.D. Mich. 2003), dismissal of Plaintiff's claim as preempted by MUTSA is not warranted at this time.   Accordingly, Count VII of Plaintiff's Complaint is not dismissed and Defendants' Motion is denied.

### VII. CONCLUSION

For the reasons discussed herein, Defendants' Motion to Compel or in the Alternative Dismiss Portions of the Complaint [#28] is **DENIED**.

**IT IS SO ORDERED.**


s/Gershwin A. Drain _____
GERSHWIN A. DRAIN
UNITED STATES DISTRICT JUDGE

Dated:  December 23, 2020


CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 23, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager